MURDOCK, Justice.
Oak Grove Resources, LLC, and several affiliated business entities (“the Oak Grove defendants”)[1] petition this Court for a writ of mandamus directing the Jefferson Circuit Court to dismiss two consolidated cases against them. We deny the petition in part and dismiss it in part.

I. Facts and Procedural History

On September 16, 1996, Linda Weekley and approximately 185 other individuals (“the Weekley plaintiffs”) filed an action in the Bessemer Division of the Jefferson Circuit Court alleging trespass, nuisance, negligence, and wantonness against U.S. Steel Mining Company and affiliated business entities (“the USM defendants”) for allegedly allowing coal dust from U.S. Steel Mining’s coal-processing plant in Concord (“the plant”) to pollute their neighborhood (“the Weekley action”).[2] The action sought compensatory damages for injury to the Weekley plaintiffs’ properties and injunctive relief to enjoin the USM defendants from emitting pollution onto the affected properties.
On July 31, 1997, Tommy White filed an action (“the White class action”) identical to that filed by the Weekley plaintiffs against the USM defendants,[3] except that White sought and received class-action treatment on behalf of everyone living within a five-mile radius of the plant. Like the Weekley plaintiffs, the plaintiffs in the White class action sought monetary and injunctive relief against the USM defendants for U.S. Steel Mining’s operation of the plant. Both cases were assigned to Judge Dan C. King.
In March 1999, eight of the Weekley plaintiffs tried their case to a jury; the jury returned a verdict in favor of the USM defendants. On August 28, 2002, the trial court granted those plaintiffs’ motion for a new trial. The USM defendants appealed that order to this Court. On October 2, 2002, while that appeal was pending, the Weekley plaintiffs entered into a settlement agreement with the USM defendants regarding their claims against the USM defendants (“the Weekley settlement”). The Weekley settlement provided, in pertinent part:
“[The Weekley plaintiffs’] claims for monetary damages will be dismissed with prejudice on payment of the sum of Three Million Dollars. Payment must be made immediately, and deposited into the trust account of [the Weekley plaintiffs’] counsel. Immediately upon said deposit, each Plaintiff, or their Court-appointed guardian or other legally authorized representative, will dismiss his/ her monetary claims, and the trial court shall enter an order of dismissal, costs taxed to defendant.
“[The Weekley plaintiffs’] claims for equitable and injunctive relief will remain pending, but inactive, during the pendency of the class action claims’ for injunctive relief made in [the White class action] subject to the stipulation that, under no circumstances, shall the pending claims for equitable and injunctive relief in [the Weekley action] remain inactive longer than 18 months following the date of dismissal of [the Weekley plaintiffs’] monetary claims for relief.
“In further consideration for settlement, each [Weekley ] plaintiff will execute an irrevocable and binding agree *1193 ment ... with respect to [the White class action, which shall provide]:
[[Image here]]
“4. [The Weekley plaintiffs] will not file lawsuits against [the USM] defendants, or take legal action in [the White class action], before the expiration of 18 months following dismissal of [the Weekley plaintiffs’] monetary-claims, or before the date that the injunctive relief awarded by the trial court in [the White class action] becomes a final non-appealable order, whichever date first occurs. In other words, under no circumstance shall this provision remain in force for more than 18 months following the date of dismissal of [the Weekley plaintiffs’] monetary claims.
“5. The claim for injunctive relief made in [the Weekley action] shall be dismissed on such date as the trial court’s order of specific injunctive relief becomes final and non-appealable in [the White class action] but only if this date occurs within 18 months of the date of dismissal of [the Weekley plaintiffs’] monetary claims.
“6. On and after the expiration of said 18 month period, [the Weekley plaintiffs] shall not be bound by the agreements set out in Items 1, 2, 8, 4, and 5 above, but will be free to take such legal action in [the White class action], or in any other court proceeding, as may be authorized by Alabama law, both case law and statutory law, or to enforce such injunctive relief as may have been awarded by the Court in [the White class action], or to seek such further injunctive remedies as may be permitted by law with respect to the issues of fugitive dust including coal dust that are raised in this action and in [the White class action].”
Two days later, on October 4, 2002, the plaintiffs in the White class action settled with the USM defendants (“the White settlement”). The White settlement defined the non-opt-out plaintiff class as “all natural persons, who at any time between and including January 1, 1990 and the Effective Date ... lived on, leased or owned property within a radius of five (5) miles of operations conducted by [the USM defendants] at [the plant].” The Weekley plaintiffs do not dispute for purposes of this petition that they fall within the definition of membership in the White class action.
The White settlement provides for the plaintiff class in that action to forgo monetary damages in exchange for the agreement of the USM defendants to implement 14 actions toward “the proper maintenance and upgrade of the system to facilitate the goals of eliminating or minimizing particulate matter and other airborne emissions” (“the injunctive relief’). The White settlement provided that the trial court would enter an order “retaining exclusive jurisdiction over this controversy” and that the expert for the plaintiffs in the White class action would “review [the injunctive relief]” and periodically “inspect the facility” and “approve or suggest modifications or additional remedial measures.” The White settlement provided that in exchange for the USM defendants’ compliance with the injunctive relief, the members of the White class would release the USM defendants from all “settled claims.” The White settlement defined “settled claims” as
“all known and unknown claims that [the White class] may presently have or in the future may have against [the USM defendants], arising from or in any way relating in whole or in part to any discharge or release of particulate matter or other airborne emissions during the
*1194 Applicable Time Period,[4] ... including without limitation all known or unknown claims for present or future damages or remedies, of whatever kind or character ... from exposure occurring prior to the Effective Date ...
The White settlement stated that it was binding on the USM defendants and “their successors and assigns which continue to operate [the plant].”
The White settlement defined the “effective date” of the settlement to be 10 days following the expiration of the time to appeal the judgment in the White class action. Judge King entered the final order in the White class action on October 23, 2002, making the “effective date” of the settlement December 14, 2002.[5] That order “permanently barred and enjoined” the members of the White class from “instituting or prosecuting any action or proceeding seeking relief in any form against [the USM defendants], ... [their] successors [or] assigns, ... relating to and arising out of the Settled Claims, all of which claims or causes of action are hereby declared to be compromised, discharged, settled, and released.” The order also provided that without affecting the finality of the order, “the Coui't ... retains jurisdiction over this action for the purposes of enforcing this Final Judgment Order and for the purposes of exercising its equitable powers supervising [the USM defendants’] commitments in carrying out [the White settlement].” The order specifically found that,
“based on the evidence presented at the Fairness Hearing and the submittals of the parties, that completion and continued performance of the Injunctive Relief set forth in [the White settlement] will prevent or minimize the off-site migration of particulate matter or other airborne emissions generated in the operations of [the plant] such that any such off-site migration will not be so offensive as to impair comfortable enjoyment of property or to materially interfere with the ordinary comforts of human existence.”
During the next 24 months, the USM defendants began implementing the actions required by the injunctive relief granted in the White settlement. On June 30, 2003, Oak Grove Resources, LLC, purchased the plant from the USM defendants, and it is undisputed that Oak Grove is bound by the terms of the White settlement.
Also on October 4, 2002, the Weekley plaintiffs filed a motion in which they moved to
“dismiss[ ] the monetary claims made by [the Weekley plaintiffs] with prejudice, ... with the court retaining jurisdiction to enter an award of costs with respect to the monetary claims and preserving all non-monetary claims, that is, [the Weekley plaintiffs’] claims for injunctive relief.”
In that motion, the Weekley plaintiffs also “requested] that the Court’s order place their claims for injunctive relief on the Court’s administrative docket for a period not to exceed 24 months with leave for [the Weekley plaintiffs] to proceed with injunc-tive relief pursuant to the terms of [the Weekley settlement].” At no time following the entry of Judge King’s final order in *1195 the White class action on October 23, 2002, did the Weekley plaintiffs move to dismiss their claims for injunctive relief.
On August 30, 2004, Judge King placed the Weekley action on the administrative docket. On September 20, 2004, the Weekley plaintiffs filed a motion to restore the case to the active docket. The Oak Grove defendants filed a motion to dismiss the Weekley plaintiffs’ remaining claims based on the Weekley settlement, but Judge King denied the motion and granted the Weekley plaintiffs’ motion, noting that “[t]he Court continues to retain jurisdiction” of this case.
On September 22, 2004, Jo Ann Waid and approximately 180 other individuals (“the Waid plaintiffs”) filed an action in the Jefferson Circuit Court against the USM defendants and the Oak Grove defendants, alleging that the plant “caused and continues to cause particulate emissions of coal fines and coal dust into the air” (“the Waid action”). The Waid plaintiffs sought compensatory damages and injunctive relief for the alleged damage to their properties caused by emissions from the plant. The Waid plaintiffs do not dispute that they fall within the definition of membership in the White class action.
The Oak Grove defendants filed a motion to dismiss the Waid action, arguing that it was precluded by the White settlement. In response, the Waid plaintiffs conceded that they had filed the action because they “have been injured and continue to be injured by [the USM defendants’] past and continued emission of airborne pollutants and their continued failure and refusal to abide by the injunc-tive requirements of [the White settlement].” They contend, however, that their action was not precluded by the White settlement because, they say, their claims concerned injuries occurring after the effective date of the White settlement.
On July 14, 2005, Judge King granted the Oak Grove defendants’ motion to dismiss as to the Waid plaintiffs’ claims for monetary damages, concluding that those claims “cannot be maintained while this Court oversees implementation of the in-junctive relief ordered in [the White class action].” The July 14 order further noted that the Waid plaintiffs’ claims for injunc-tive relief would remain pending “and [would] be considered with the Court’s ongoing consideration of the remedial relief ordered in [the White class action].” The Waid plaintiffs appealed, and the Oak Grove defendants moved to dismiss the appeal on the ground that the July 14, 2005, order was not a final order; this Court agreed, dismissing the appeal (case no. 1041764, Oct. 13, 2005). On October 21, 2005, the Waid plaintiffs filed a “Motion to Lift [the] Stay” on their damages claims arising from emissions after the December 2002 effective date, arguing that this Court’s dismissal of the appeal from the July 14, 2005, order as being from a nonfinal judgment meant that the July 14 order was an order staying the litigation.
On March 6, 2006, the Weekley plaintiffs filed a motion to amend their complaint to add the Oak Grove defendants as defendants and to add post-effective-date damages claims, which Judge King granted. On June 5, 2006, the Oak Grove defendants filed a motion to dismiss the Weekley plaintiffs’ amended complaint. In his brief to this Court, Judge King relates that in early 2007 he began reviewing the Waid plaintiffs’ argument (in their motion to lift the stay) related to the specific language of the White settlement, as well as the Week-ley plaintiffs’ motion to amend their complaint. He states that their arguments caused him
“to recognize my earlier dismissal of [the Waid plaintiffs’] post-Effective Date damages claims was in direct contra *1196 diction of the express terms of [the White settlement], and that the Waid plaintiffs were correct in their argument that construing [the White settlement] to bar claims that arose after the Effective Date/Applicable Time Period would be void against public policy.”
Judge King states that he was preparing to revise his prior rulings to allow the Waid plaintiffs and the Weekley plaintiffs to pursue their post-effective-date damages claims when he was removed from the bench.
As a result of an indictment, Judge King was disqualified in April 2007. Retired Judge Dan Rogers assumed Judge King’s caseload, including the Waid action and the Weekley action. On October 10, 2007, Judge Rogers held a hearing concerning the Waid plaintiffs’ motion to lift the stay. He denied the motion, noting that no further evidence had been presented to change his mind regarding the logic of Judge King’s July 14, 2005, order dismissing the Waid plaintiffs’ claims for damages. On October 16, 2007, Judge Rogers issued an order in which he found that the Weekley settlement “contemplated dismissal of all of [the Weekley plaintiffs’] claims upon entry of a final judgment order settling [the White class action].” Accordingly, Judge Rogers dismissed the Weekley plaintiffs’ amended complaint without prejudice and “dismissed all and every part of the case remaining that has not been dismissed ... with prejudice, pursuant to [the Weekley settlement].”
The indictment against Judge King was dismissed in October 2007, and he resumed his judicial duties. On November 16, 2007, the Weekley plaintiffs and the Waid plaintiffs filed motions to reconsider Judge Rogers’s orders of October 10 and October 16, which Judge King treated as motions to vacate under Rule 59(e), Ala. R. Civ. P. On November 19, 2007, Judge King vacated the orders of Judge Rogers without receiving a response from the Oak Grove defendants, explaining in his brief to this Court that he was simply doing what he had previously decided he was going to do before his disqualification. The Oak Grove defendants then filed a motion seeking Judge King’s recusal from presiding over the White settlement because one of the lawyers in the White action was also Judge King’s defense attorney in the criminal case against him. Judge King declined to recuse himself, but on February 13, 2008, he issued an order assigning the White action to Judge Mac Parsons.
On November 27, 2007, at the Oak Grove defendants’ request, Judge King set aside his order vacating Judge Rogers’s October 10, 2007, order in the Waid action and Judge Rogers’s October 16, 2007, order in the Weekley action, and set the matter for a hearing. On February 29, 2008, Judge King held a hearing in which he again declared that he was vacating Judge Rogers’s October 10 and October 16, 2007, orders, thus reinstating the Weekley action and the Waid action, but only as to post-effective-date damages claims. In doing so, Judge King stated that he was “clarifying” his July 14, 2005, order to reflect that he now believed he could not bar the Weekley plaintiffs and the Waid plaintiffs from pursuing post-effective-date damages claims. In explaining his reasoning, Judge King stated:
“There was a bar date on [the White class action], and in [the Weekley action and the Waid action] any damages they may have are outside of that bar date and it’s a continuing trespass so it continues to go on. So, number one, what happens in [the White class action] has absolutely zero to do with [the Weekley action and the Waid action] because their damages are separate and apart *1197 from those people outside of that bar date.”
Judge King consolidated the Weekley action and the Waid action in his order from the bench. Also at the hearing, the Weekley plaintiffs and the Waid plaintiffs voluntarily dismissed the USM defendants from the case, and they voluntarily dismissed any possible claims accruing before July 1, 2003. Judge King memorialized his rulings from the bench in a written order on March 5, 2008.
The Oak Grove defendants petition this Court for a writ of mandamus,[6] requesting that this Court order the trial court to dismiss the Weekley action and the Waid action as collateral to the White class action.[7] The Oak Grove defendants also contend that the Weekley action should be dismissed on the basis of the Weekley settlement, specifically paragraph 5 of the settlement document.

II. Standard of Review

“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The Oak Grove defendants contend that the trial court lacks subject-matter jurisdiction to entertain the Week- *1198 ley action and the Waid action. “The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003) (citing Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000)). “We review de novo whether the trial court had subject-matter jurisdiction.” Solomon v. Liberty Nat’l Life Ins. Co., 953 So.2d 1211, 1218 (Ala.2006).

III. Analysis

A. The Weekley Action
Before we evaluate the Oak Grove defendants’ arguments pertaining to the Weekley action, we must review whether this Court possesses jurisdiction to address any aspect of the Weekley action. See, e.g., Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987) (“[Jjurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero rnotu.”).
Judge Rogers issued an order on October 16, 2007, dismissing the Weekley action in its entirety. On November 16, 2007, the Weekley plaintiffs filed a Rule 59(e), Ala. R. Civ. P., motion to vacate Judge Rogers’s order of dismissal. Judge King issued an order on November 19, 2007, granting the Weekley plaintiffs’ motion to vacate Judge Rogers’s order of dismissal. Because it had been granted, the Weekley plaintiffs’ motion to vacate, like Judge Rogers’s order itself, no longer remained “pending” beginning November 19, 2007.
On November 27, 2007, however, in response to a motion from the Oak Grove defendants, Judge King set aside his November 19 order vacating Judge Rogers’s order of dismissal and set the matter for a hearing. Judge King then held a hearing on February 29, 2008, in which he purported again to vacate Judge Rogers’s October 16, 2007, order of dismissal and to reinstate the Weekley plaintiffs’ claims against the Oak Grove defendants.
The November 27, 2007, order had the effect of reinstating the dismissal of the case as of that date; this, in turn, had the effect of reviving, as of that date, the Weekley plaintiffs’ motion to vacate. See Campbell v. I.L. Lyons & Co., 420 So.2d 66, 67 (Ala.1982) (treating as final for purposes of appeal a June 4, 1981, order that set aside a prior, May 29, 1981, order that, in turn, had set aside an earlier, May 22, 1981, order denying motion to vacate a summary judgment entered on April 10, 1981). Under Rule 4(a)(3), Ala. R.App. P., the time for filing an appeal is suspended during the pendency of a postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P., such as the motion to vacate filed by the Weekley plaintiffs.
Rule 59.1, Ala. R. Civ. P., provides, however, that “[n]o post-judgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record .... ” The 90th day from November 27, 2007, was February 25, 2008. Judge King did not rule on the motion to vacate until February 29, 2008. There is no indication in the record before us of the express consent of the parties to extend the time beyond 90 days. “ ‘The language of Rule 59.1 requires express consent.’ ” Harrison v. Alabama Power Co., 371 So.2d 19, 21 (Ala.1979) (quoting Personnel Bd. for Mobile County v. Bronstein, 354 So.2d 8, 11 (Ala.Civ.App.1977)). As a result, under Rule 59.1, Ala. R. Civ. P., the Weekley plaintiffs’ motion to vacate was deemed denied by operation of law as of February 25, 2008. Therefore, Judge King was without jurisdiction to enter his February 29, 2008, order purporting to vacate Judge Rogers’s order so as to reinstate the Weekley action, and, *1199 accordingly, Judge King’s February 29, 2008, order is void. The Oak Grove defendants’ petition for a writ of mandamus as to the February 29, 2008, order, insofar as it pertains to the Weekley action, therefore is moot.[8]
B. The Waid Action
The Oak Grove defendants contend that the Waid action is due to be dismissed as a collateral attack on the White class action. The Oak Grove defendants observe that the court in the White class action “retainfed] jurisdiction over this action for the purposes of enforcing this Final Judgment Order and for the purposes of exercising its equitable powers supervising [the USM defendants’] commitments in carrying out [the White settlement]” and that the final order enjoined the members of the White class from bringing actions “relating to or arising out of the Settled Claims.” They also note that it is undisputed that all the Waid plaintiffs fall within the definition of the class in the White class action. The Oak Grove defendants therefore conclude that the Waid plaintiffs are attempting to litigate matters that fall within the exclusive jurisdiction of the court in the White class action.
The Oak Grove defendants rely on Ex parte Liberty National Life Insurance Co., 888 So.2d 478 (Ala.2003), in contending that the Waid action represents an improper collateral attack on the White class action. In Liberty National, this Court granted a petition for a writ of mandamus requesting that the Choctaw Circuit Court dismiss a class action by insureds challenging premium increases for cancer policies because all the class members had participated in a previous class action, Adams v. Robertson, 676 So.2d 1265 (Ala.1995), which was filed in the Barbour Circuit Court, involved the same insurance policies, and ended in a settlement. That settlement resulted in a court order by the Barbour Circuit Court stating that it reserved
“ ‘continuing jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validity of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; ... and all other matters pertaining to the Settlement or its implementation and enforcement.’ ”
888 So.2d at 480 (quoting Robertson, 676 So.2d at 1307).
This Court concluded that the underlying action in Liberty National “involve[d] matters ‘relating to’ the Robertson settlement and its enforcement” because the action concerned the “special policies” that were created in the Robertson settlement as well as future premium increases in those special policies that were governed by the Robertson settlement. 888 So.2d at 480. This Court found:
“This type of collateral attack is not permitted. The boundary lines between courts of concurrent jurisdiction must be preserved. ‘ “ ‘[W]here two courts have equal and concurrent jurisdiction, the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction.’ ” ’ Ex parte First Nat’l Bank of Jasper, 717 *1200 So.2d 342, 350 (Ala.1997) (quoting Ex parte Liberty Nat’l Life Ins. Co., 631 So.2d 865, 867 (Ala.1993), quoting in turn Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970)).”
888 So.2d at 481. Because the Barbour Circuit Court expressly retained continuing jurisdiction over matters relating to the Robertson settlement, the Court concluded that the Choctaw Circuit Court lacked jurisdiction to hear the underlying action in Liberty National.
Although it is true that the court in the White class action retained exclusive jurisdiction over matters relating to or arising out of the claims settled as a result of the White settlement, the Waid plaintiffs’ claims do not involve those claims. The settled claims are those “arising from or in any way relating in whole or in part to any discharge or release of particulate matter or other airborne emissions during the Applicable Time Period”; the “Applicable Time Period” is the period between January 1, 1990, and the “effective date” of the settlement in December 2002. See supra note 5. The Waid plaintiffs seek damages and injunctive relief for injuries to their properties caused by coal fines and dust emitted from the plant after July 1, 2003, a date after the effective date of the White settlement. Judge King expressly limited the Waid action to damages for injuries sustained after the effective date of the White settlement, precluding injunctive relief because it would conflict with the jurisdiction of the court in the White class action.[9]
Thus, Liberty National does not mandate that the Waid action be dismissed as a collateral attack on the White class action because the claims in the Waid action do not relate to the White class action. To hold otherwise would contradict the nature of settlement agreements, which are “ ‘conclusive only as to those matters which the parties fairly intended to include within its terms, and settlement is effective except as to those elements of the claim specifically reserved.’ ” Gonzalez, LLC v. DiVincenti, 844 So.2d 1196, 1202 (Ala.2002) (quoting Sho-Me Motor-Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 91 (Ala.1985)).
One of the other cases in the line that this Court has decided concerning claims of a class of holders of cancer-insurance policies sold by Liberty National[10] illustrates that new claims brought after the effective date of a settlement are not necessarily precluded, even when the trial court retains jurisdiction for purposes of overseeing the settlement. In Grimes v. Liberty National Life Insurance Co., 726 *1201 So.2d 615 (Ala.1998), one of the members of the Robertson class filed an action in the Jefferson Circuit Court seeking compensatory damages and punitive damages based on allegations of the tort of outrage, fraud, breach of contract, and bad-faith refusal to pay an insurance claim. In response, Liberty National requested that the Barbour Circuit Court issue an order enforcing its injunction in Robertson because Grimes based at least some of her claims on statements or representations alleged to have been made by Liberty National at the time it sold Grimes her cancer policy. The Barbour Circuit Court agreed with Liberty National and issued an order enjoining Grimes from “ ‘asserting in a separate action any claims based upon representations or statements allegedly made to the plaintiff in connection with her decision to purchase her 1986 policy.’ ” Grimes, 726 So.2d at 617.
The Barbour Circuit Court did not, however, preclude all Grimes’s claims. Specifically, the circuit court stated:
“ ‘As to claims of fraud based upon alleged representations made after the entry of the Final Judgment [in Robertson ], which the plaintiff in the underlying action contends were made in 1995 and 1996, such claims are not barred by the existing injunction. Likewise, claims for breach of contract based upon the written policy and claims for bad faith failure to pay claims under the policy as written are not barred by the existing injunction. As noted above, however, any claim for breach of contract or bad faith based upon an alleged oral contract or representation arising prior to the entry of the Final Judgment is barred by the existing injunction.’”
888 So.2d at 617 (bracketed language in Grimes). In other words, the Barbour Circuit Court did not enjoin Grimes from maintaining claims in her separate action that arose after the entry of the final judgment in Robertson. This Court upheld the Barbour Circuit Court’s authority to issue the injunction, noting that the Barbour Circuit Court “was acting well within its power in enforcing its permanent injunction so as to prevent Ms. Grimes from relitigating in another forum any claims against Liberty National that she, as a member of the Robertson class, had released in 1994.” 888 So.2d at 618. Thus, this Court agreed with the Barbour Circuit Court that Grimes had not released claims that arose after the final judgment in Robertson, even though the Barbour Circuit Court retained jurisdiction over the Robertson settlement.
Similarly, although the Waid plaintiffs are precluded from pursuing claims that, as members of the White class, they released in the White settlement, Judge King correctly permitted them to pursue claims that fall outside the terms of the release. “When the language of a release specifically limits the scope of the release, the release will not bar claims outside the scope of the release.” Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala.1999). The Waid plaintiffs’ damages claims do not fall -within the continuing jurisdiction reserved to the court in the White class action under the White settlement because that settlement concerns claims that arose within the “Applicable Time Period,” i.e., January 1, 1990, to the effective date in December 2002, while the Waid plaintiffs’ damages claims specifically concern alleged injuries suffered after July 1, 2003.
Based on the foregoing, the Oak Grove defendants do not have a clear legal right to a dismissal of the Waid action; accordingly, their petition for a writ of mandamus regarding the Waid action is due to be denied.

*1202
IV. Conclusion

Because the trial court no longer had jurisdiction over the Weekley action, its order purporting to vacate the dismissals of the various claims in the Weekley action as ordered by Judge Rogers is void and those dismissals remain in effect. Therefore, the Oak Grove defendants’ petition for a writ of mandamus concerning the Weekley action is moot and is dismissed as such. Because the claims in the Waid action do not fall within the reserved jurisdiction of the court in the White class action, the Oak Grove defendants do not have a right to a dismissal of the Waid action on that basis, and the Oak Grove defendants’ petition for a writ of mandamus concerning the Waid action therefore is denied.
PETITIONERS’ MOTION TO SUPPLEMENT GRANTED; PETITION DISMISSED IN PART AND DENIED IN PART.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.

.The affiliated business entities include Pinn-Oak Resources, LLC; PinnOak Coal Sales, LLC; Questor Management Co., LLC; and National Resources Partners, LP.

. In their submissions, the parties sometimes refer to this as the Smith action.

. In their submissions, the parties sometimes refer to this as the Bowden action.

. The “Applicable Time Period” is defined in the White settlement as the period between January 1, 1990, and the "Effective Date” of the White settlement.

. There is reference in the briefs of an "effective date” of December 22, 2002; that date is also stipulated in the record as the "effective date.” The discrepancy between that date and December 14, 2002, is of no significance to the disposition of this petition.

. On February 6, 2009, the Oak Grove defendants filed a motion to supplement their mandamus petition to include an order filed on December 11, 2008, by Judge Parsons in the White class action purporting to exercise the court's exclusive jurisdiction to "suggest ... additional remedial measures.” The order approved a "supplement” to the White settlement that "provides for [air] monitoring to determine whether there exists an excessive migration of particulate matter onto the property of the [White class] that is attributable to [the Oak Grove defendants].”
In their motion, the Oak Grove defendants contend that the December 11, 2008, order further demonstrates that the Waid action and the Weekley action represent collateral attacks upon claims that are within the province of the White settlement. On April’ 7, 2009, the Waid plaintiffs and the Weekley plaintiffs filed a motion to strike the Oak Grove defendants’ motion to supplement the record, their most persuasive argument being that Judge Parsons's order was not before Judge King when he reinstated the Waid action and the Weekley action as to post-effective-date damages claims.
“Of course, there is no ‘record on appeal’ in a mandamus proceeding; it [is the petitioner’s] obligation to attach to [the] petition ‘copies of any order or opinion or parts of the record that would be essential to an understanding of the matter set forth in the petition.' ” Ex parte Trawick, 959 So.2d 51, 62-63 (Ala.2006) (opinion on rehearing) (quoting Rule 21(a)(1)(E), Ala. R.App. P.). Consequently, the requirements for supplementing the record on an appeal do not apply in a mandamus proceeding. We therefore grant the Oak Grove defendants' motion. But see infra note 7.

. On March 25, 2009, Judge King filed an amendment to his March 5, 2008, order, which appears to be a response to Judge Parsons's December 11, 2008, order in the White class action. In substance, the amended order simply restates Judge King's conclusion that the White class action "subsumed all claims of any individuals ... up to the time of the ‘Effective Date' set forth in the Final Judgment Order of that action.” Judge King reiterated his belief that he "retain[ed] personal and subject matter jurisdiction to preside over and hear all post-Effective Date damages claims raised by plaintiffs in [the Waid action and the Weekley action].”
The Oak Grove defendants contend that we should ignore Judge King's March 25, 2009, order because this Court issued a stay of the proceedings when it ordered answers and briefs on the Oak Grove defendants' petition for mandamus. We agree, and we have not considered that order in reaching our decision, although we note that it appears only to have restated Judge King's previous ruling.

. Rule 4(a)(3), Ala. R.App. P., provides:
"If such post-judgment motion is deemed denied under the provisions of Rule 59.1 of the Alabama Rules of Civil Procedure, then the time Tor filing a notice of appeal shall be computed from the date of denial of such motion by operation of law, as provided for in Rule 59.1.”
Thus, the Weekley plaintiffs had 42 days from February 25, 2008, to file an appeal of Judge Rogers’s order dismissing their case. No such appeal was filed.

. The White court's December 11, 2008, order concerning further remedial action in the White class action, far from refuting this fact, as the Oak Grove defendants contend, actually confirmed it by stating again that that court “retainLed] exclusive jurisdiction over this case," that its order "enforcefd] the Final Judgment Order and exercisefd] its equitable powers in supervising the [White settlement],” and that if the "supplement” to the White settlement is successfully implemented, “the [White ] Class will dismiss [the Oak Grove defendants] from this lawsuit, and become permanently enjoined from prosecuting any claims that were or could have been asserted in this lawsuit ....” (Emphasis added.) Thus, the latest order from the court in the White class action confines itself, as it must, to the settled claims.

. This Court has released at least five opinions pertaining to claims against Liberty National brought by holders of cancer-insurance policies: Solomon v. Liberty Nat’l Life Ins. Co., 953 So.2d 1211 (Ala.2006); Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478 (Ala.2003); Grimes v. Liberty Nat’l Life Ins. Co., 726 So.2d 615 (Ala.1998); Adams v. Robertson, 676 So.2d 1265 (Ala.1995); and Ex parte Liberty Nat’l Life Ins. Co., 631 So.2d 865 (Ala.1993).