MURDOCK, Justice.
Joan McCullough Scott (“Scott”), .an Alabama resident, petitions this Court for a writ of mandamus directing the Jefferson Probate Court to vacate its order requiring all beneficiaries of the estate of Kathryn Marie Lange (“Lange”), deceased (“the estate”), who are residents of Alabama to pay into the probate court distributions they receive from a concurrent administration of the estate in London, England. We grant the petition and issue the writ.
Facts and Procedural History
Lange was born in Birmingham, Alabama, in 1930. In 1953 she married a Danish citizen and moved to Copenhagen. She divorced her husband in 1961, and in 1962 she became a resident of London, England, where she resided until her death on January 4, 2010. Despite living overseas for the majority of her adult life, Lange retained her United States citizenship, and she never became a British citizen.
During Lange’s life, she purchased several parcels of real property in London and a parcel of property in the English countryside. At her death, Lange owned the aforementioned parcels of real property in England, a small sum in an English bank account, some personal property located in England, and approximately $350,000 in personal property located in Alabama.
The Estate Administrations
On January 11, 2010, Lange’s nephew, • Charles. Lange Clark, filed a petition for letters of administration as to the estate in the Jefferson Probate Court. The petition alleged that Lange was domiciled in Jefferson County when she died, that she had no last will and testament, that she left assets in Jefferson County that consisted of approximately $350,000 in personal property and no real property, and that Lange was survived by Clark and his mother (Lange’s sister), Adrienne O’Brien (“O’Brien”), both of whom are residents of Mountain Brook.
The probate court granted Clark’s petition on the day it was filed and issued him letters of administration. All references hereinafter to “Clark” are to Clark in his capacity as administrator. All references hereinafter to the “Jefferson County administration” shall mean the estate administration in the Jefferson Probate Court.
A few days after Clark received letters of administration, he was informed that Lange had a last will and testament (“the will”) and that the will was in the possession of an attorney in England. Clark attempted to obtain a copy of the will, but his attempt was unsuccessful. On January 29, 2010, Clark filed a “Motion for Approval of Expenses” in the probate court seeking funds to hire counsel in London and disclosed the fact that he had received information indicating that Lange had a will. Thereafter, see discussion infra, the *1044 probate court entered an order authorizing Clark to hire counsel in London to advise him as to whether an ancillary estate should be opened there and as to questions concerning the validity of the will.
The will was dated December 19, 1985. The will includes several specific bequests of personal property and a residuary devise of Lange’s remaining property, including the parcels of real property noted above, to the trustees of a testamentary trust. The trustees were directed to sell such property or otherwise to convert it into cash for purposes of distribution among 14 individual beneficiaries (“the individual beneficiaries”), one of whom is Scott, and 9 charitable beneficiaries (“the charitable beneficiaries”). Neither O’Brien nor Clark is named as a beneficiary, personal representative, or trustee in the will.
After Clark received information as to the existence of the will, he filed a “caveat” in the relevant court in London, England, preventing the admission of the will to probate pending a determination as to its validity.
On August 6, 2010, Simon Winston, one of the persons named as co-personal representative and cotrustee in the will, filed a motion to intervene in the Jefferson County administration. Winston requested that the Jefferson Probate Court stay further proceedings until the will was properly offered for probate in England. Scott also filed a motion to intervene in the Jefferson County administration, likewise requesting a stay of further proceedings in the probate court.
On August 24, 2010, Clark filed a motion in the probate court requesting that it declare that Lange’s domicile at her death was Jefferson County, Alabama.
On October 1, 2010, the charitable beneficiaries initiated proceedings to establish the validity of the will in the London High Court of Justice, Chancery Division (“the Chancery Court”); it was assigned claim no. HC10C02799. In that proceeding, the charitable beneficiaries named a number of defendants, including O’Brien, who the Chancery Court described as Lange’s “intestacy beneficiary,” and Clark, who the Chancery Court described as Lange’s “administrator under an Alabama grant of letters of administration.” The charitable beneficiaries also named as defendants the individual beneficiaries, Winston, and the other person whom the will nominated as co-personal representative and cotrustee. The Chancery Court appointed Helen Freely, an English solicitor, as “interim” personal representative of the estate in England pending a determination as to the validity of the will.[1]
Clark retained a London law firm, Macfarlanes, LLP (“Macfarlanes”), to represent him in the Chancery Court proceeding. Clark sought to defend against any declaration by the Chancery Court as to the validity of the purported will; he asserted that Lange lacked testamentary capacity when she executed the will.
On October 15, 2010, Winston filed an amendment to his motion to intervene in the probate court. The amendment disclosed that the will had been offered for probate in London, that Clark had appeared in the Chancery Court proceedings to contest the validity of the will, and that the Chancery Court had appointed Freely as interim personal representative as to the estate in England. Winston requested that the probate court stay further proceedings pending the Chancery Court’s determination as to the validity of the will.
*1045 Clark also filed a motion in the probate court to which he attached a copy of the will. The motion asserted that Lange was domiciled in Jefferson County at her death and that the will should be offered for probate in the probate court for purposes of determining whether the will was valid. Clark also filed a response to Winston’s and Scott’s respective motions to intervene.
On November 17, 2010, the probate court entered an order in response to Clark’s petition for a declaration as to Lange’s domicile. The order states that Lange’s domicile “was Birmingham, Alabama.” Scott appealed that order to the circuit court.[2]
Eventually, the parties to the Chancery Court proceeding entered into a settlement agreement. On July 12, 2012, the Chancery Court entered an order determining that the will was valid and approving the settlement agreement. Pursuant to the terms of the settlement agreement, the July 2012 order further directed that Freely was to serve as personal representative for purposes of administering the estate in England. Also, the July 2012 order notes that Scott agreed to dismiss her appeal of the probate court’s order as to Lange’s domicile, which Scott subsequently did.
As to Clark, the July 2012 order provided:
“6. There be paid out of the Estate in due course of the administration to [Clark] (1) his costs of and occasioned by the [will contest] in the agreed sum of £265,500, and (2) his accrued and further legal costs of the proceedings pending in Alabama described in the Schedule (insofar as they exceed those already discharged out of the Deceased’s Estate in the USA), up to a maximum sum of £75,000.”
In part, the “Schedule” referred to in the preceding quote describes the Jefferson County administration, “in which the [probate court] has made orders in relation to the domicile of the Deceased.”
As to the distribution of the estate assets that were in dispute between O’Brien and the individual beneficiaries and the charitable beneficiaries, the settlement agreement and the July 2012 order provided that O’Brien was to receive 27.5% of the net residuary estate and that the individual beneficiaries and the charitable beneficiaries were to receive the remaining 72.5% of the net residuary estate. The net residuary estate was defined as
“the net distributable residuary estate of the Deceased in England and the USA[,] that is to say after the payment of all liabilities, taxes, the costs of the proceedings in the USA and of these proceedings to the extent agreed above, together with the costs of administration of the Estate ... and after payment of the pecuniary and specific legacies set-out in the Will.”
As to O’Brien and Clark, the July 2012 order further provides, “[f]or the avoidance of doubt,” that “[t]he percentage sum referred to [as to O’Brien], ... is inclusive of any and all further entitlements that [Clark] or Mrs. O’Brien have or may have in relation to the Estate under Alabama law.” And, the order states:
“The parties agree that it is intended that all such chattels, jewelry and shares as are mentioned in the ‘statement of assets received by [Clark] from the estate of Kathryn Marie Lange Deceased *1046 or-which are in the US’ dated 8 December 2011 and attached documents shall be retained by Mr. Clark (as agent for Mrs. O’Brien) and appropriated towards Mrs. O’Brien’s, entitlement under this agreement,”
Finally, the July 2012 order states:
“These terms shall be in full and final settlement of any and all claims that the parties and the Trustee [of the testamentary trust established under Lange’s will] have or may have against each other or the Estate, whether arising out of or in relation to the Estate or the death of the Deceased or otherwise, ⅛ eluding:
“(1) the Claim [the Chancery Court proceeding]; [and]
“(2) the US proceedings [the Jefferson County administration].”
On August 23, 2012, Freely filed a document in the High Court of Justice, Family Division, averring that Lange was domiciled “in England and Wales” at her death and that the Chancery Court had entered an order determining that the will was valid and that letters of administration with the will annexed were to be issued to her. Freely also avowed that she would “collect, get in and administer according to law the ■ real and personal estate of [Lange].”
On September 7, 2012, Clark, O’Brien; Scott, and Winston filed a joint motion in the probate court as to the July 2012 order. The joint motion included a copy of the July 2012 order and requested that the probate court enter an order approving the terms of the July 2012 order and “enforcing its terms regarding the property, assets and proceedings in [England]” and “adopting its terms and conditions insofar as applicable to .the property, assets, costs, accounting and proceedings in the State of Alabama.”
On October 12, 2012, the probate court entered an order approving and adopting the July 2012 order and the terms of the settlement agreement. The probate court’s order further states that the court “retains jurisdiction of this matter and all parties hereto to ensure compliance with the aforesaid [July 2012] order ... and to take such remedial, equitable and other relief necessary if said [o]rder is not complied with.”
On December 13, 2012, the District Registrar of the High Court of Justice, Family Division, issued an order’ stating that Lange was domiciled in “England and Wales” at her death, that her will had been “proved and registered,” and that “[aid-ministration of all the estate which by law devolves to and vests in the personal representative of the said deceased was granted by the said Court on this date to” Freely (“the. English administration”). The order further states that “it appears from the information supplied on the application for this grant that the gross value the said estate in the United Kingdom amounts to £2,393,666 and the net value of such estate amounts to £1,977,534.”
The Macfarlanes Debt
As noted above, Clark retained Macfar-lanes to represent him in the Chancery Court proceedings. Their relationship, however, became the source of additional litigation, See Macfarlanes, LLP v. Clark, No. 2:13-CV-01519-MHH (N.D. Ala. Dec. 24, 2014) (not reported in F. Supp. 3d) (“Macfarlanes I”).[3] As the Macfarlanes I court noted:
*1047 “On March 2,2010, the Jefferson County Probate Court entered an ‘Order to Pay Expenses, Hire Counsel and Manage Real Property’ that included the following provision:
“ ‘[T]he Administrator, ■ [Charles] Lange Clark is authorized to hire counsel in London, England to advise him of any and all rights, responsibilities and obligations of [Kathryn Marie Lange’s] estate. He may pay any and all cost to said counsel for managing the estate in London, England from the funds currently in the estate of Kathryn Marie Lange. Also, should any legal documentation be presented in the courts in England, the Administrator is advised to get legal counsel in England to question the validity of said documentation since it has been brought to the attention of this court that the deceased had numerous issues that could have diminished her capacity to make said will or legal documents. It is FURTHER ORDERED that the Administrator is authorized, within reason, to pay any and all expenses for the burial of the deceased, [and] legal fees for the estate in both Birmingham and London.
[[Image here]]
“After Mr. Clark. contacted Macfar-lanes, the firm sent Mr. Clark an engagement letter. The letter states:
“ “We have identified you as our client for professional purposes and we will only address our bills to you.
“ ‘[B]ased on our current limited knowledge, we would envisage that our fees for [working on the matter of Kathryn Marie Lange’s estate in England] will be in the region of £40,000 to £70,000 plus any VAT and expenses. It is at this early stage impossible to provide an estimate of the eventual costs if this matter were to proceed to a full trial.
“ ‘However, we will write to you separately once the scope of the work required becomes clear. ...
“‘Our services are provided to you solely and exclusively by Macfarlanes LLP.’
“The létter references ‘Terms of Business’ which Mr. Clark acknowledges that he received. The Terms of Business include the following provision:
“ ‘3.6 You will remain responsible for our costs and expenses and we will bill you even if there is an agreement with a third party to pay them on your behalf.’
“Sometime after Macfarlanes began working on the estate issues, Mr. Clark returned a copy of the engagement letter to Macfarlanes. Mr. Clark signed the letter as follows: ‘Lange Clark, Administrator of the estate of Kathryn M. Lange.’
“Macfarlanes billed Mr. Clark for the fees, costs, and expenses associated with the work that the firm performed for the Alabama estate in London. Mr. Clark paid invoices totaling $46,000. He stopped paying Macfarlanes in October of 2010, primarily because the legal fees exceeded Macfarlanes’s original estimates. Clark terminated his relationship with Macfarlanes in December 2010. That same month, Macfarlanes sent him a final invoice for $138,913.70. Mr. Clark did not pay the invoice.
“On February 3, 2012, Macfarlanes filed a claim against Mr. Clark personally in the High Court of Justice, Queen’s Bench Division, in London to recover unpaid legal fees, expenses, and interest. Mr. Clark was served with a copy of that claim personally at his place of business in Alabama on March 2, 2012. On May 17, 2012, Clark, with new coun *1048 sel, appeared in the collection proceeding. Eventually, the English Court granted the application of Clark’s new counsel to withdraw as solicitors of record because they ... ‘had not received further instructions from their client.’ Mr. Clark did not respond to orders from the English Court or to correspondence from Macfarlanes regarding the proceeding. In short, Mr. Clark did not participate.
“After Mr. Clark failed to respond to an ‘unless order’ from the High Court of Justice, Chancery Division ..., the English court found that Mr. Clark had submitted himself to the jurisdiction of England and Wales and entered judgment against Mr. Clark for £126,611.21. On April 2, 2013, Macfarlanes notified Clark of the judgment by letter and email and demanded payment. Mr. Clark has not satisfied the judgment. Mr. Clark did not appeal the decision of the High Court of Justice.”
(References to record, headings, and footnotes omitted.)
In addition to the foregoing facts that are pertinent to Clark’s dispute with Macfarlanes, we note that on August 28, 2013, Clark sent Freely a letter that states: “As you know, I have been sued by Macfarlanes, LLP for my acts as the duly appointed administrator of my aunt’s estate. I hereby demand that the you, as the administrator of the estate in England, indemnify me for all costs and liability.”
On October 9, 2013, Clark filed a “Motion for Indemnification” in the probate court. Clark requested that the probate court issue an order indemnifying him as to costs incurred in defending against Macfarlanes’s claim and against any judgment issued against him and in favor of Macfarlanes. On November 3, 2013, the probate court issued an order granting Clark’s “Motion for Indemnification.” The order states that the estate “shall indemnify ... Clark for any and all costs incurred in defending” against Macfarlanes’s claim and against any judgment in favor of Macfarlanes and against Clark. We note that, when Clark filed his motion for indemnification, he had already distributed all but $68.99 of the assets in the estate that were subject to his control in the Jefferson County administration. Scott did not object to Clark’s motion for indemnification or to the probate court’s order granting that motion.[4]
On November 21, 2013, Freely, who was not a party to the indemnification proceedings in the probate court, sought instructions from the Chancery Court as to, among other issues, “a claim by Mr. Clark for an indemnity with respect to a claim made against him by his former English solicitors, Macfarlanes, LLP.” Freely’s request for instructions states:
“On 28 August 2013 I received a letter from Mr. Clark claiming an indemnity from the Estate with respect to a claim being made against him for payment of fees by his former English solicitors, Macfarlanes, LLP (‘Macfarlanes’), incurred prior to December 2010. Applications filed by Macfarlanes and Mr. Clark in courts in Alabama ... indicate that on 18 March 2013 Macfarlanes obtained judgment against Mr. Clark for £126,-611.21 with respect to legal fees, interest and costs in proceedings in the English High Court. It appears that Mr. Clark submitted to the jurisdiction with respect to Macfarlanes’ claim but that in his application to the Alabama court Mr. Clark disputes liability on the basis that *1049 he retained Macfarlanes in a representative capacity.”
Freely further avers that she informed the individual beneficiaries and the charitable beneficiaries that Clark sought indemnity “for all costs and liabilities” as to Macfar-lanes’s claim against him. Further, Freely noted that the Chancery Court’s July 2012 order approving the settlement agreement appeared to address Clark’s indemnity claim but that she was seeking directions “as to whether [Clark’s] claims or any part of them are to be treated as administration expenses or otherwise paid out of the assets of the Estate.” Counsel for the individual beneficiaries and the charitable beneficiaries responded to Freely’s request for instructions, arguing that Clark’s indemnity claim should be denied based on the terms of the July 2012 order adopting the settlement agreement.
On February 5, 2014, Clark filed a “Witness Statement” in the Chancery Court responding to Freely’s request for instructions and to the opposition of his claim by the individual beneficiaries and charitable beneficiaries. Clark stated: “I am advised that, although [the indemnity] claim [is] good under American law, [that claim] will not be upheld under English law in respect of the English assets and therefore I will not pursue [that claim].”
On May 20, 2014, during proceedings as to Freely’s request for instructions, the Chancery Court noted that Clark had “abandoned his claim” for indemnity as to the English administration and that the claim was “an opportunistic claim which was wholly without merit.” Thereafter the Chancery Court entered an order declaring that Clark “is not entitled to payment for costs allegedly incurred in relation to his administration of the Deceased’s estate in the US ... or any sum as administration expenses.”
On November 11, 2014, Clark filed a “Motion for Escrow” in the probate court. Clark’s motion alleged that “there is only a de minimis amount of funds held in the estate account in Jefferson County, Alabama.” Nevertheless, Clark noted, “there remains (despite a substantial prior distribution by the administrator of the assets held by the English administrator) funds remaining to be distributed by the English administrator.” Clark further stated that “the most practical means to enforce this Honorable Court’s Order on Indemnification ... is to have any and all funds payable to beneficiaries in the State of Alabama paid into this Court pending determination of the costs of indemnification” of Clark.
On November 14, 2014, Scott filed an opposition to Clark’s motion for escrow. Scott argued (1) that the probate court had no jurisdiction to order the escrow of funds paid to Scott from the English administration [5] and (2) that, based on the terms of the settlement agreement, Clark had no claim to such funds.[6] We note that when Scott filed her opposition to Clark’s motion for escrow, Scott already had received distributions from the English administration totaling £54,009.26.
The probate court heard oral arguments as to Clark’s motion for escrow, and, on *1050 February 19, 2015, the probate court entered an “Order of Escrow” (“the escrow order”) requiring all beneficiaries of the estate who resided in Alabama to pay into the probate court “the monies due” such beneficiaries. The escrow order further provided that “the disbursement of said funds will be ordered by this Court upon a final settlement in this case or by a consent settlement entered into by all parties and heirs.”
Scott then filed the present petition for a writ of mandamus, requesting that this Court direct the probate court to vacate the escrow order. Thereafter, Scott received an additional £11,842.16 distribution from the English administration..
On July 29, 2016, the United States District Court for the Northern District of Alabama entered a summary judgment in favor of Macfarlanes and against Clark as to Macfarlanes’s claim that the judgment it obtained in England was enforceable against Clark in Alabama. See Macfarlanes, LLP v. Clark, No. 2:13-CV-01519-MHH (N.D. Ala. July 29, 2016) (not reported in F. Supp. 3d) (“Macfarlanes II”).
Standard of Review
Scott argues that the. probate court has no jurisdiction as to the estate assets that come into her possession from the English administration, particularly because such assets derive from real property in England. It .is well settled that questions of jurisdiction — whether lack of subject-matter jurisdiction or lack of jurisdiction over the person or thing at issue— are reviewable by a petition for a writ of mandamus. See, e.g., Ex parte PinnOak Res., LLC, 26 So.3d 1190, 1198 (Ala. 2009) (subject-matter jurisdiction); Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala. 2002) (personal jurisdiction). As to such questions, this.Court’s review is de novo. See, e.g. PinnOak Res., 26 So.3d at 1198; Elliott, 830 So.2d at 729.[7]
As this Court has stated:
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995).
Analysis
Although the parties disagree over whether Lange was domiciled in England or in Jefferson County at the time of her death, under the facts before us we need not resolve that issue in order to decide whether Scott’s petition is due to be granted. As Scott notes, the assets in which she has an interest, and that are the subject of the escrow order, derive from real property that was located in England and that was not subject to the jurisdiction of the Jefferson Probate Court. It is well settled that
*1051 “wills to lands are governed by the lex loci rei sitae. This rule extends not only to manner of execution, but to the construction and legal effect of such devises.
“The rule is founded upon the inherent right of every sovereign state, for its own security and in keeping with its dignity and independence, to regulate the alienation, devise, or descent of real estate within its borders.”
Phillips v. Phillips, 213 Ala. 27, 29, 104 So. 234, 236 (1925) (emphasis added).[8] It is true that
“[t]he estate of a decedent, wherever he may reside at the time of his death, and in however many different States portions of the property and assets may be situate, is one estate. Notwithstanding this unity of estate, if administrations are granted in the different States where the property is located, there is not unity of administration — they are separate and independent of each other. ... Each administrator is accountable in the courts of the State of his appointment, and each administration must be settled where it is granted,”
Equitable Life Assurance Soc’y v. Vogel’s Ex’x, 76 Ala. 441, 446-47 (1884) (emphasis added).
It is undisputed that the assets that are the subject of the escrow order are part of the English administration. It is also undisputed that the court with jurisdiction over the English administration has issued no order directing Freely to distribute assets from that administration directly to Clark or to the probate court for purposes of Clark’s indemnity claim. Indeed, Clark abandoned any such claim after Freely
sought instructions from the Chancery Court regarding the claim. Absent such an order, however, the assets of the estate that are the subject of the English administration are not subject to the jurisdiction of the probate court as part of the Jefferson County administration. See Alen v. Estate of Juddine, 60 So.3d 852, 857 (Aa. 2010) (Bolin,- J., concurring specially) (noting that the administration of an estate is an exercise of in rem jurisdiction and that only the court having jurisdiction over the res may exercise jurisdiction as to that res); 31 Am. Jur. 2d Executors and Administrators § 1 (2012) (“The administration of a decedent’s estate is purely statutory and is in rem, not in personam, in that it conclusively determines the interests of all persons in the property of a decedent within the jurisdiction of the court.”); cf. Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (discussing the general principles that where “two suits are in rem or quasi in rem, requiring that the court-or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other” and that “the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other”).[9]
In Johnson v. McKinnon, 129 Ala. 223, 226, 29 So. 696, 697 (1901), this Court acknowledged. that an administrator’s “representation of the estate [is] a qualified one” and “[does] not extend beyond *1052 the assets of which the court .., appointing him had jurisdiction.” The Court continued:
“In Ela v. Edwards, 13 Allen 48, 95 Mass. 48 [ (Mass. 1866) ], the court held that, if ancillary administration is taken out in another state upon the estate there of a deceased citizen of Massachusetts, a decree of the judge of probate there allowing a claim of the administrator against the estate, and finding a balance due to him over and above the assets then coming to his hands, is not conclusive upon the court of Massachusetts, and will not entitle the administrator to charge for such balance upon his settlement of the estate in that state. ... [T]he two administrations are entirely independent of each other, and there is no privity between the two administrators.”
Johnson, 129 Ala. at 227, 29 So. at 697. See generally 34 C.J.S. Executors and Administrators § 1100 (2009)(“There is no privity between administrators of the same estate appointed in different jurisdictions, or between an executor in one jurisdiction and an ancillary administrator in another. ... Several administrations granted in different jurisdictions on the same estate are each several and distinct, and have no common liability for expense incurred by each.”). And, in Jefferson v. Beall, 117 Ala. 436, 23 So. 44 (1898), this Court stated:
“The accepted theory of administration is that the right and liability is purely representative, and exists only by force of the official character, and so cannot pass beyond the jurisdiction which grants it, and reserves to itself full and exclusive authority over all the assets of the estate within its limits....
“... [I]n this class of cases the defendant is not personally a party, otherwise than as a commissioned representative of the court making the appointment, and for the limits of its jurisdiction; so that beyond that jurisdiction he can exercise no authority or do or omit any act which will affect the due administration of the trust by the local authorities.
“The objection thus goes to the power or jurisdiction of the court over the subject-matter of the administration of assets in a foreign State, in the control of foreign administrators, and to the capacity of the defendant to do any act to the prejudice of the domestic administration. Consent cannot give such jurisdiction, or extend the limited authority of the administration to extra-territorial acts resulting in judgments against the assets of the estate.”
117 Ala. at 439-40, 23 So. at 44-45 (emphasis added).
We find the foregoing principles supportive of our conclusion that Clark may not assert his claim for indemnity against estate assets that are not part of the Jefferson County administration. The probate court has jurisdiction only over the estate assets that are part of the Jefferson County administration.[10]
Further, we note that, even assuming for the sake of argument that Lange was domiciled in Jefferson County at the time of her death and that the English administration is an ancillary administration, Clark abandoned any claim he may have *1053 had against the assets from that administration.
“Although, under the law of the ancillary jurisdiction all claims against decedent’s estate may be barred, a proceeding lies in the ancillary jurisdiction for the transfer of assets to the domiciliary jurisdiction for the payment of debts. However, the assets will not be transmitted to the domicile simply for the purpose of subjecting them to certain taxes.
“While there is no question as to the authority of the court in the ancillary jurisdiction to order a residue of assets in that jurisdiction transmitted to the domiciliary representative, the court of one jurisdiction has no authority over the representative of the other to compel him or her to bring in such assets whether it is the court of the domiciliary or of the ancillary jurisdiction.
“As to the proceeds of real estate which still retain the character of that species of property, the ordinary rule with regard to transmitting assets to the domicile of decedent usually does not apply, because the right of succession to real estate is governed by the lex loci rei sitae. However, in some cases where land was ordered sold to pay debts the court having control of the ancillary administration has ordered the surplus proceeds, after payment of local creditors, to be transmitted to the domiciliary representative for the payment of debts.”
34 C.J.S. Executors and Administrators § 1104 (2009) (headings omitted; emphasis added).
By virtue of its escrow order, the Jefferson Probate Court has attempted to exercise control over payments made to Scott from the English administration. Those payments to Scott do not derive from the res over which the Jefferson Probate Court has jurisdiction, i.e., the property that is the subject of the Jefferson County-administration, and the probate court has no power to compel Scott to pay into escrow the property she receives or has received from the English administration as such. Cf. Hanson v. Denckla, 357 U.S. 235, 250, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (noting that, just as “a State is forbidden to enter a judgment attempting to bind a person over whom it has no jurisdiction, it has even less right to enter a judgment purporting to extinguish the interest of such a person in property over which the court has no jurisdiction”). The escrow order is due to be vacated.
Because the probate court had no jurisdiction to require Scott to place into escrow in the Jefferson County administration property she received from the English administration, we grant the petition, issue the writ, and direct the probate court to vacate the escrow order.
PETITION GRANTED; WRIT ISSUED.
Stuart, Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.

. Apparently, an "interim” personal representative is analogous to an administrator ad colligendum, i.e., a temporary personal representative appointed to collect and preserve the decedent's estate until a permanent personal representative can be appointed.

. Our statement that Scott appealed to the circuit court should not be construed as an affirmation that the order of the probate court as to Lange’s domicile was a final, appealable order.

. In Macfarlanes I, Macfarlanes filed a petition to enforce its English judgment against Clark. The decision addresses and denies Clark's mbtion to dismiss Macfarlanes’s petition,

. Scott states that she had no reason to object to the motion because she had no interest in the $68.99 that remained in the Jefferson County administration.

. Scott notes that she is not challenging the probate court's indemnification order as to Clark. Instead, she is challenging the purported use of estate assets that are not the subject of the Jefferson County administration to fund Clark’s indemnification.

. Scott further argued that, if "Clark’s escrow theory” were correct, any order must "apply equally to any payment to ... O’Brien.” Indeed, if Clark’s theory were correct, it would appear that the only equitable way to fund his indemnity claim would be on a pro rata basis as to all the beneficiaries of the estate, wherever located.

. Scott articulates the question before us in terms of subject-matter jurisdiction, but the cases she cites and quotes in support of her argument' involve concepts of personal jurisdiction, see Ex parte Trust Co. of Virginia, 96 So.3d 67, 69 (Ala. 2012), and in rem jurisdiction, see Hanson v. Derickla, 357 U.S. 235, 246-50, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Also Scott’s arguments are couched in terms of a lack of jurisdiction or authority "to seize property not belonging to or in possession of the Jefferson County Estate,” i.e., in rem jurisdiction. Clark has not been prejudiced by Scott's lack of precision in her argument; Clark’s brief in answer to the petition responds to Scott’s in rem jurisdiction argument.

.- Based on the orders we have been provided from the Chancery. Court proceedings, England likewise follows the rule of lex loci rei sitae.

. Although not discussed by Scott, it also appears that those assets derivé from her interest in an English testamentary trust, over which the Jefferson Probate Court has no jurisdiction.

. Clark argues that the Court of Civil Appeals’ decision in Leonard v. Woodruff, 204 So. 3d 901 (Ala. Civ. App. 2016), supports the probate court’s escrow order. Leonard addresses whether a personal representative may recover attorney fees from a beneficiary who filed a civil action in another jurisdiction in an effort to unravel a property disposition that occurred before the decedent’s death. Leonard does not address whether a beneficiary must surrender to an Alabama probate court assets he or she receives from an estate administration in another jurisdiction.