MURDOCK, Justice.
James G. Casey, Sr. (“James Sr.”), and Julie Toner (“Julie”), the daughter of James Sr. and Jo Ann H. Casey (“Jo Ann”), seek a writ of mandamus from this Court directing the Jefferson Circuit Court (“the circuit court”) to dismiss Jo Ann’s petition to remove a guardianship and conservatorship proceeding concerning her (“the guardianship proceeding”) from the Jefferson Probate Court (“the probate court”) to the circuit court. We grant the petition and issue the writ.

*824
I. Facts and Procedural History

On June 11, 2008, Jo Ann filed a petition for divorce in the domestic-relations division of the Jefferson Circuit Court (“the domestic-relations court”); the divorce action is not the subject of the present petition. In her divorce petition, Jo Ann, who was 74 years old, alleged that James Sr. had committed domestic violence against her and that he had hidden from her most of their marital property and her separate property. According to James Sr. and Julie, however, the divorce proceeding was initiated as a result of undue influence exerted on Jo Ann by James G. Casey, Jr. (“James Jr.”), the son of James Sr. and Jo Ann.
On June 12, 2008, the domestic-relations court issued an ex parte temporary restraining order enjoining James Sr. “from harassing, intimidating, or committing any acts of violence upon [Jo Ann] during the pendency of [the divorce proceeding]” and “from disposing, transferring, spending, giving away or secreting any assets ... or otherwise disposing of any assets or monies belonging to [him or Jo Ann] except [those needed by him] for his normal and customary day to day living expenses.”[1]
In July 2008, James Sr. filed a motion to dismiss the divorce petition on the ground that Jo Ann was mentally incompetent. Thereafter, the divorce proceeding was the subject of several delays.
In March 2009, the domestic-relations court entered an order stating that James Sr.’s motion to dismiss was “moot.” Neither that order nor any of the other materials before us reflect the basis for the court’s determination that James Sr.’s motion was moot.
Notwithstanding its March 2009 order finding James Sr.’s motion to dismiss Jo Ann’s divorce petition “moot,” the domestic-relations court entered an order in October 2009 setting Jo Ann’s divorce petition for trial in February 2010; the trial date was subsequently reset to April 20, 2010. Also in October 2009, James Sr. filed a motion requesting that the domestic-relations court order an independent medical examination of Jo Ann and appoint a guardian ad litem for Jo Ann.
In December 2009, James Sr. deposed Dr. Paul Roller, a geriatric-health-care physician, who had been treating Jo Ann for cognitive-impairment symptoms since May 2007. The purpose of this deposition apparently was to obtain evidence in support of James Sr.’s opposition to the divorce petition.
On January 5, 2010, James Sr. and Julie filed a petition in the probate court seeking letters of guardianship and conserva-torship as to Jo Ann. Thereafter, the domestic-relations court stayed the divorce proceeding pending resolution of the issues in the guardianship proceeding.
The probate court appointed Rita Mi-zelle as a “court representative” in the guardianship proceeding. After accepting her appointment, Mizelle interviewed James Sr., Julie, Jo Ann, and James Jr. In March 2010, Mizelle submitted a report to the probate court. According to the report, the “environment in [James Sr. and Jo Ann’s] home is very depressing and dysfunctional.” Mizelle’s report recommended against the appointment of James Sr. and Julie as the co-guardians and co- *825 conservators of Jo Ann. It also recommended that Jo Ann
“be given a complete medical and psychological [examination] to determine if she was in the early stages of Alzheimer’s or dementia. At such time when a doctor determines she needs special care or guardianship, I recommend [the guardianship] be given to someone that can meet [Jo Ann’s] needs without placing her in an environment of fear and dislike.”
On March 29, 2010, the probate court entered an order appointing Dr. Roller to examine Jo Ann and requiring him to submit a written report to the court “as to any mental illness, mental deficiency, physical illness or disability, physical or mental infirmities accompanying advanced age, chronic use of drugs or chronic intoxication, which affects the ability of the alleged incapacitated person to handle her personal affairs and/or financial interests.”
On April 16, 2010, Dr. Roller submitted his written report to the court. The report states, in part:
“From a physical standpoint Mrs. Casey’s health has been fairly stable. She has chronic atrial fibrillation and requires the use of an anticoagulant to keep her blood thin and prevent strokes. She has been able to maintain consistent follow-up and management of this medication which often times is difficult secondary to the need for routine blood testing. She has lost some weight and appears to be suffering from some anxiety and depression related to her current social stressors.
“Mental status today also appears to be stable. A brief screening questionnaire, Mini-Mental status exam, was performed by my staff. Mrs. Casey scorefd] a 22/30 on this exam which is unchanged from her initial evaluation almost 3 years ago. She answered most of my questions appropriately and appeared to understand her current medical issues. As noted in my office visit assessment, she continues to participate in her own healthcare needs, her activities of daily living such as personal hygiene, dressing herself and ambulating without difficulty. She also appears to maintain her instrumental activities such as using the telephone, assisting with her medications, house cleaning and attending various social activities.
“In my opinion, Mrs. Casey may have some mild cognitive deficit and memory loss but is not incapacitated. She does need some assistance in order to continue to reside in the community and this appears to be provided to her by her son rather than her spouse or other children. I am aware that she has previously been evaluated by Dr. Terri Steele who is a geriatric psychiatrist at University of Alabama Birmingham and has had formal neuro psychiatric testing by Dr. Daniel Marson, a psychologist at University of Alabama at Birmingham. I would defer to them for any additional information regarding her capacity to make financial decisions.”
Also in April 2010, J. Edmond Odom, Jr., an attorney who had been appointed Jo Ann’s guardian ad litem in the guardianship proceeding, submitted a letter to the probate court asserting that Jo Ann “does not need a Conservator or Guardian appointed for her in any fashion.” Further Moses O. Stone, an attorney who also had been appointed as a “court representative” in the guardianship proceeding, filed a report with the probate court. Stone’s report concludes that, based upon his interviews with James Sr., Julie, Janet Hubbard (who also is a daughter of James Sr. and Jo Ann), Jo Ann, and James Jr., “it is my considered opinion that the Co-petitioners James [Sr.] and Julie Toner should *826 not be appointed Guardian and Conservator.”
On August 16, 2010, the probate court entered an order appointing another physician, Dr. Rebecca Jones, to examine Jo Ann and to submit a report to the court regarding whether Jo Ann had any physical or mental condition or substance-abuse problem that “affects the ability of the alleged incapacitated person to handle her personal affairs and/or financial interests.” Acting on the advice of her legal counsel, Jo Ann refused to submit to the scheduled examination by Dr. Jones, and she filed a motion requesting that the probate court vacate its August 16 order and enter a summary judgment in her favor and against James Sr. and Julie as to their petition for letters of guardianship and conservatorship. In support of her motion, Jo Ann relied, in part, upon the December 2009 deposition testimony of Dr. Roller and upon the opinions or recommendations given to the probate court by Dr. Roller, Mizelle, Odom, and Stone. As to Dr. Roller’s testimony, Jo Ann’s motion alleged:
“Dr. Roller testified that [Jo Ann] is capable of communicating with individuals and with him; of making health care decisions regarding her medication, care and treatment. According to Dr. Roller, [Jo Ann] is also capable of making responsible decisions regarding her finances, medication and health care. She is able to care for herself, feed herself, dress herself and manage her personal hygiene. According to Dr. Roller, [Jo Ann] is also able to follow his instructions and is capable of contributing and participating in her divorce action.”
Jo Ann’s motion asserted:
“[T]he requirements of the Alabama Uniform. Guardianship and Protective Proceedings] Act have been satisfied. [James Sr. and Julie] can present no evidence that [Jo Ann] is incapacitated, incompetent nor in need of protection under the act. Thus, there being no material facts in dispute, [Jo Ann] is entitled to summary judgment and the denial/dismissal of this Petition.
“Further, to require [Jo Ann] to submit to another single medical examination and evaluation by a doctor who has never treated her while there is such evidence currently before the Court indicating that she is competent is in violation of the Alabama Uniform Guardianship and Protective Proceedings] Act, as well as violative of [her] rights to due process and equal protection. On this basis, [Jo Ann] objects to the Order of the Court directing her to submit to another medical examination by Dr. Rebecca Jones and respectfully moves this Court to set aside and vacate such order.”
The probate court set James Sr. and Julie’s petition for letters of guardianship and conservatorship for a hearing on the merits to be conducted on January 6, 2011.
On October 14, 2010, the probate court again ordered a full physical and mental examination of Jo Ann by Dr. Olga Belot-serkovskaya and directed Dr. Belotserkov-skaya to submit a report to the court regarding Jo Ann’s capacity. Before the court-ordered exam by Dr. Belotserkov-skaya occurred, Jo Ann filed a “Petition for Removal/Transfer” in the circuit court (“the removal petition”); the removal petition sought an order “removing and transferring” the guardianship proceeding from the probate court to the circuit court pursuant to § 26-2-2, Ala.Code 1975.[2] In *827 conjunction with the filing of the removal petition, Jo Ann also filed a motion requesting that the circuit court stay further action by the probate court in the guardianship proceeding. The circuit court granted the motion to stay pending its ruling on the removal petition.
James Sr. and Julie objected to the relief requested in the removal petition on the ground that the circuit court lacked subject-matter jurisdiction to remove the guardianship proceeding from the probate court to the circuit court. On December 10, 2010, the circuit court conducted a hearing on the removal petition. Thereafter, the circuit court ordered and received additional briefing from the parties as to the issue of its jurisdiction.
On February 10, 2011, the circuit court entered an order granting Jo Ann’s petition to remove the guardianship proceeding from the probate court to the circuit court.[3]
James Sr. and Julie petitioned this Court for a writ of mandamus and requested that this Court enter an order staying further proceedings in the circuit court until our disposition of their petition for the writ of mandamus. We entered an order staying the proceedings, and we now issue the writ.

II. Standard of Review

James Sr. and Julie argue that the circuit court lacked subject-matter jurisdiction to remove the guardianship proceeding when it entered the removal order. It is well settled that “ ‘[t]he question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.’ ‘We review de novo whether the trial court had subject-matter jurisdiction.’ ” Ex parte PinnOak Res., LLC, 26 So.3d 1190, 1198 (Ala.2009) (citations omitted).
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
26 So.3d at 1197 (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)).

III. Analysis

As to the administration of guardian-ships and conservatorships, the probate court is a court of general and original jurisdiction. See Ala. Const.1901, § 144;[4] *828 Ala.Code 1975, § 12-18-l(b)(6) and (b)(7); see also Ala.Code 1975, § 26-2A-31(a). Nevertheless, pursuant to Ala.Code 1975, § 26-2-2,
“[t]he administration or conduct of any guardianship or conservatorship of a minor or incapacitated person may be removed from the probate court to the circuit court, at any time before the final settlement thereof by the guardian or conservator of any such guardianship or conservatorship or guardian ad litem or next friend of such ward or anyone entitled to support out of the estate of such ward without assigning any special equity, and an order of removal must be made by the court or judge upon the filing of a sworn petition by any such guardian or conservator or guardian ad litem or next friend for the ward or such person entitled to support out of the estate of such ward, reciting in what capacity the petitioner acts and that in the opinion of the petitioner such guardianship or conservatorship can be better administered in the circuit court than in the probate court.”[5]
James Sr. and Julie contend that the circuit court did not acquire subject-matter jurisdiction over the guardianship proceeding because, they argue, there was no “administration or conduct of [a] guardianship or conservatorship” to be removed when Jo Ann filed the removal petition. We agree.[6]
As the parties and the circuit court recognized, a marked similarity exists between the language of § 26-2-2 and the language of Ala.Code 1975, § 12-11^41, which governs the removal of the administration of a decedent’s estate from the probate court to the circuit court. Section 12-11-41 states:
“The administration of any estate may be removed from the probate court to the circuit court at any time before a final settlement thereof, by any heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed of any such estate, without assigning any special equity; and an order of removal must be made by the court, upon the filing of a sworn petition by any such heir, devisee, legatee, dis-tributee, executor, administrator or administrator with the will annexed of any such estate, reciting that the petitioner is such heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed and that, in the opinion of the petitioner, such estate can be better administered in the circuit court than in the probate court.”
*829 As it does with the administration of guardianships and conservatorships, the probate court has general and original jurisdiction over the administration of decedents’ estates. See Ala. Const.1901, § 144; Ala.Code 1975, § 12-13-l(b)(l) and (2). In regard to the application of § 12-11-41, this Court has noted that “[t]he circuit court cannot assume jurisdiction over the administration of an estate when the administration has not yet begun,” Ex parte Smith, 619 So.2d 1374, 1375-76 (Ala.l993)(emphasis added), and that “[t]he circuit court cannot initiate the administra^ tion of an estate, because the initiation of administration is a matter exclusively in the jurisdiction of the probate court.” Id. at 1376. As we explained in Smith, “the mere filing of a petition for the administration of an estate does not in itself begin the administration; rather, the probate court must act upon the petition and thereby activate the proceedings, which may thereafter be subject to removal to the circuit court.” 619 So.2d at 1376. We observed in Allen v. Estate of Juddine, 60 So.3d 852, 855-56 (Ala.2010) (citing Smith, 619 So.2d at 1376), that “[t]he administration of the estate was initiated by the probate court when it granted ... letters of administration.”
This Court recently reaffirmed the foregoing propositions of law in DuBose v. Weaver, 68 So.3d 814 (Ala.2011).
“[T]he administration of an estate does not begin merely upon the filing in the probate court of a petition for letters of administration or of a petition for probate of a will and for letters testamentary. As to the former, this Court has recognized that ‘the mere filing of a petition for the administration of an estate does not in itself begin the administration; rather, the probate court must act upon the petition and thereby activate the proceedings, which may thereafter be subject to removal to the circuit court.’ Ex parte Smith, 619 So.2d [1374,] 1376 [ (Ala.1993) ]; see also, e.g., Allen v. Estate of Juddine, 60 So.3d 852, 855 (Ala.2010) ...; Ex parte Berry, 999 So.2d [883,] 886 [(Ala.2008)] (‘[T]his Court in Ex parte Smith [, 619 So.2d 1374 (Ala.1993),] held that removal of the will proceeding from the probate court to the circuit court was premature because the probate court had not initiated the administration of the estate by acting on the petition.’); and Ex parte Kelly, 243 Ala. 184, 187, 8 So.2d 855, 857 (1942). As to the latter, this Court has noted that, where no letters of general administration have issued from the probate court and where the decedent’s will has not yet been admitted to probate, the circuit court 'is without jurisdiction to make an order’ removing the administration of the estate from the probate court to the circuit court. Ex parte Pettus, 245 Ala. 349, 351, 17 So.2d 409, 410-11 (1944).”
DuBose, 68 So.3d at 821-22 (final emphasis added).
Based upon the substantial similarity of the language of § 12-11^1 and the language of § 26-2-2, the reasoning that led us to the foregoing conclusions in Smith, Juddine, and DuBose regarding § 12 — 11— 41 now compels us to a comparable conclusion regarding § 26-2-2. The filing of a petition for letters of guardianship or con-servatorship does not begin “[t]he administration or conduct of [the] guardianship or conservatorship”; rather, the probate court must act upon the petition before the guardianship or conservatorship may by subject to removal to the circuit court.[7] It *830 likewise follows that, absent the existence of a guardianship or conservatorship, the circuit court cannot remove “[t]he administration or conduct of [the] guardianship or conservatorship” from the probate court. Accordingly, as the Court of Civil Appeals concluded in Ex parte Coffee County Department of Human Resources, 771 So.2d 485, 487 (Ala.Civ.App.2000), after also noting the similarity between § 12-11-41 and § 26-2-2, “the circuit court did not have jurisdiction to enter a removal order before the probate court had acted upon” the petition for letters of conservatorship.
In the present case, James Sr. and Julie filed the guardianship proceeding requesting that the probate court determine whether Jo Ann is in need of a guardian or conservator. Although there have been numerous proceedings in the probate court concerning the question whether Jo Ann is incapacitated in such a manner that requires the appointment of a guardian or conservator, the probate court has not yet answered that question. Likewise, it has not entered an order concluding that Jo Ann is in need of a guardian or conservator or appointing a guardian or conservator. See Ala.Code 1975, § 26-2A-105(b) (“The court may appoint a guardian as requested if it is satisfied that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as a means of providing continuing care and supervision of the person of the incapacitated person.”); Ala.Code 1975, § 26-2A-135(f) (“After hearing, upon finding that a basis for the appointment of a conservator or other protective order has been established, the court shall make an appointment or other appropriate protective order.”). In other words, the probate court has not entered an order creating a guardianship or conservatorship for Jo Ann. Logically, because no guardianship or con-servatorship has been created for Jo Ann, there is no “administration or conduct” of such guardianship or conservatorship to be removed from the probate court to the circuit court.[8]

*831
IV. Conclusion

For the foregoing reasons, the circuit court lacked subject-matter jurisdiction to remove the guardianship proceeding from the probate court. We therefore order the circuit court to enter an order vacating its February 10, 2011, removal order, lifting its stay of the guardianship proceeding, and dismissing the removal petition.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and WOODALL and MAIN, JJ., concur.
BOLIN, J., concurs in the result.

. There is some discussion in the briefs as to whether James Sr. subsequently violated the restraining order by making transfers of cash to Julie and Janet Hubbard, his and Jo Ann’s other daughter, and whether the parties agreed at one point to a dissolution of the restraining order. Neither of these issues appears germane to the question before us in this mandamus proceeding.

. The petition also cited § 26-2A-32, Ala. Code 1975, as a basis for removal. Section 26-2A-32 addresses venue of guardianship and conservatorship actions and provides no *827 basis for the circuit court’s removal order in this case.

. The circuit court’s removal order also purported to transfer the guardianship proceeding to the domestic-relations division of the circuit court so that the guardianship proceeding could be consolidated with the stayed divorce proceeding.

. Section 144, Ala. Const. 1901, uses the term "guardianship” in the sense that it was used before the enactment of the Alabama Uniform Guardianship and Protective Proceedings Act, Ala. Code 1975, § 26-2A-1 et seq. ("the AUGPPA”). At that time, the term "guardianship” might have referred to either (1) a guardianship of the person of a minor or of an incapacitated person, which still is referred to as a "guardianship” under the AUGPPA, see Ala.Code 1975, § 26-2A-20(7)(defining "guardian”), or (2) a guardianship of the property (i.e., estate) of a minor or of an incapacitated person, which is referred to as a "conservatorship” under the AUGPPA, see Ala.Code 1975, § 26-2A-20(2)(defining "conservator”). See also Comment to § 26-2A-1 ("[The AUGPPA] recognizes two fiduciary capacities — i.e., a 'guardian' who is 'of the person' and analogous to the role of the parent, and a 'conservator' who is 'of the property' and more closely analogous to the role of a trustee. Historically, in many states, including Alabama, the term 'guardian' covered both of these capacities and for that reason has been a source of confusion.”); see also 1 *828 William Blackstone, Commentaries *448 ("The guardian with us performs the office both of the tutor and curator of the Roman laws; the former of which had the charge of the maintenance and education of the minor, the latter the care of his fortune; or, according to the language of the court of chancery, the tutor was the committee of the person, the curator the committee of the estate.”).

. When the Alabama Uniform Guardianship and Protective Proceedings Act ("AUGPPA”) was enacted in 1987, § 26-2-2 was amended to reflect the terminology used in the AUGP-PA. Compare § 26-2-2, Ala.Code 1975, as amended, 1987 Ala. Acts, No. 87-590, with Tit. 21, § 26, Ala.Code 1940 (1958 Recomp.) ("The administration or conduct of any guardianship of a minor or person of unsound mind may be removed .... ”), the language of which remained unchanged when Tit. 21, § 26, was first recodified as § 26-2-2 in 1975.

. The circuit court has original jurisdiction over actions filed pursuant to the Adult Protective Services Act, Ala.Code 1975, § 38-9-1 et seq. The present case was not initiated in the circuit court pursuant to that Act.
Likewise, the present case does not involve, and we do not consider, the issue whether any of the orders of the probate court properly could have been appealed to the circuit court. See Ala.Code 1975, § 26-2A-36; Ala. Code 1975, § 12-22-20 et seq.

. The probate court has subject-matter jurisdiction to determine whether a minor is in need of a guardian or conservator and whether a person is incapacitated and is in need of *830 a guardian or conservator. See Ala.Code 1975, § 26-2A-31. The filing of a petition that raises the possibility of the necessity for the appointment of a guardian or conservator, however, is not the equivalent of creating a guardianship or conservatorship that must be "administ[ered] or conduct[ed].”
Also, although we recognize that certain guardians exist by nature (i.e., a parent or natural guardian) or may be created by appointment, see Ala.Code 1975, § 26-2A-70 (temporary “guardian of a minor by parental appointment”); Ala.Code 1975, § 26-2A-100 (discussing a parent’s and a spouse’s right, by will or other writing, to appoint a guardian for an incapacitated child or spouse, respectively), the present case, which concerns an attempt to obtain a guardianship and conser-vatorship by appointment in the probate court, does not require us to determine how § 26-2-2 might be applied to the removal of such a natural or parent-appointed guardianship from the probate court to the circuit court.

. The circuit court specifically concluded in its February 2011 removal order that "§ 26-2-2[, Ala.Code 1975,] allows that the administration or conduct of a petition for conserva-torship or guardianship may be removed to the Circuit Court before final settlement.” (Emphasis added.) Section 26-2-2 does not refer to the removal of a petition for conserva-torship or guardianship, however, but to the “administration or conduct of any guardianship or conservatorship.”
Also, we note that whatever distinction, if any, the legislature might have intended between the terms "administration” and “conduct” in regard to guardianships and conser-vatorships, the language of § 26-2-2 plainly contemplates that a guardianship or conser-vatorship exist before either its "administration or conduct” can be the subject of removal from the probate court to the circuit court. This conclusion also is consistent with case-law references to the "conduct of a guardianship” in relation to the actions of a guardian after his or her appointment. See Moody v. Bibb, 50 Ala. 245, 246 (1874) (" 'Moody set *831 up, as a bar to this suit, the decree discharging him on said final settlement of April 16, 1863; and he insisted that, in the management and conduct of his said guardianship, he acted throughout in good faith, and wholly without fraud.’ ” (quoting trial court’s order) (emphasis added)); see also, e.g., Aubrey's Estate v. De Lozier, 128 Okla. 79, 261 P. 192, 194 (1927) (“The annual account [of a guardian] is a part of the regular administration of the court, is intended to inform the judge and also interested parties of the status and general conduct of the guardianship, and is usually accepted and filed ex parte, and without a hearing.” (emphasis added)); Rickel v. Peck, 211 Minn. 576, 584, 2 N.W.2d 140, 144 (1942) (to like effect); Jones v. Parker, 67 Tex. 76, 82, 3 S.W. 222, 226 (1886) (to like effect); In re Guardianship of Langill, 123 Wash. 704, 704, 212 P. 1119, 1119 (1923) (to like effect); and Wescott v. Upham, 127 Wis. 590, 107 N.W. 2, 3 (1906) (to like effect).